McMULLEN, Respondent, *v.* SHIELDS, Sheriff, Appellant.

(No. 7,186.)

(Submitted January 6, 1934. Decided February 2, 1934.)

[29 Pac. (2d) 652.]

192

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. Ernest Abel,* of Counsel, argued the cause orally.

*Messrs. West & Stromnes,* for Respondent, submitted a brief; *Mr. Einar Stromnes* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action in conversion. It was tried to the court without a jury on an agreed statement of facts, resulting in judgment for plaintiff in the sum of $150. Defendant appealed from the judgment.

The facts agreed upon were these: Plaintiff is a farmer in Cascade county and the head of a family, within the meaning of our exemption statute. The farm is operated exclusively by means of machinery that is power driven or propelled, and plaintiff does not have in the operation of the farm any horses, mules or other beasts of burden. On December 21, 1931, plaintiff was the owner, and entitled to the possession of, a model A Ford automobile of the value of $150. On that day defendant levied upon and seized the automobile by virtue of a writ of attachment. Defendant posted notice of the sale of the automobile for January 2, 1932. Prior to the sale plaintiff served upon defendant an affidavit claiming the automobile as exempt, but this was ignored by defendant, who proceeded to sell the automobile. At the time of the seizure by defendant, and for a long time prior thereto, the automobile was the only means of conveyance plaintiff had on the farm. It was used by her, and was the only means which she had to convey oil, groceries and other farming supplies from the place of purchase to her farm, and the only means of conveyance she had to transport produce from the farm to the place of market. It was specifically agreed that, if the automobile was exempt under section 9428, Revised Codes 1921, plaintiff was entitled to a judgment in the sum of $150. Hence the only question presented is whether, under the facts, the property was exempt from execution under section 9428, supra.

So far as material, that section exempts to one situated as was plaintiff "farming utensils or implements of husbandry, not exceeding in value six hundred dollars; also, two oxen, or

two horses or mules, and their harness, one cart or wagon, set of sleds, and food for such oxen, horses, cows, or mules for three months.''

This statute, being one of exemption, should be liberally construcd for the benefit of the exemption claimant. (*Lindley* v. *Davis,* 7 Mont. 206, 14 Pac. 717; *Mennell* v. *Wells,* 51 Mont. 141, 149 Pac. 954; *Swanz* v. *Clark,* 71 Mont. 385, 229 Pac. 1108; *Oregon Mortgage Co.* v. *Dunbar,* 87 Mont. 603, 289 Pac. 559, 73 A. L. R. 113; *De Fontenay* v. *Childs,* 93 Mont. 480, 19 Pac. (2d) 650.)

Keeping in mind this rule of construction, we proceed to a consideration of the question whether a Ford automobile which, under the facts here, has taken the place of what was formerly called a "wagon," is a "wagon or cart," within the meaning of section 9428.

Webster's Dictionary defines a "wagon" as "a kind of four wheel vehicle, especially one used for carrying freight or merchandise." In the case of *Stichter* v. *Southwest Nat. Bank,* (Tex. Civ. App.) 258 S. W. 223, 225, it was held that a Ford truck is a "farm wagon," within the meaning of an exemption statute. The court in that case, after holding that a Cadillac touring car was exempt as a carriage or buggy, said: "The use of the Ford truck on appellant's farm was of the same character and served the same purpose as the farm wagon named in the exemption statute. So far as we are informed, no higher court of this state has passed on this precise question. If the same reasoning is adopted by which an automobile touring car is permitted to take the place of the buggy or carriage in the exemption statute, we are impelled to the conclusion that the Ford truck in the instant case is included within the term 'wagon.' Its use is more necessary to the head of the family than is that of the pleasure vehicle, and the term 'wagon' is just as much a generic term as is 'carriage' or 'buggy.' In making the exemption, the legislature had in mind the use or purpose to which the vehicle was put rather than the specific character of the vehicle named. Webster's Dictionary defines the word 'wagon' to mean, 'a kind of four

wheel vehicle, especially one used for carrying freight or merchandise.' The legislature believed that a vehicle used for carrying commodities was necessary for the use of the head of a family and so designated the wagon as exempt for that purpose, because it was the vehicle then in use for such purpose. Our supreme court has held, in recognition of this purpose, that a dray is included in this section of the exemption statute. (*Cone* v. *Lewis* [64 Tex. 331, 53 Am. Rep. 767], supra.) So far as the record in this case shows, this Ford truck was used for no other purpose than that consistent with the use of the farm wagon, and consistent with the evident purpose of the legislature in the enactment of this statute. We therefore hold that an automobile truck of the kind and character this one is, and put to the use that is made of this truck, is included in the exemption statute.''

In *People* v. *Corder*, 82 Colo. 318, 259 Pac. 613, it was held that a complaint alleging that a five-passenger Buick touring car was a farm wagon, stated sufficient facts to constitute a cause of action, the court saying: ''We agree with plaintiff in error that the words 'farm wagon' ought to be regarded as including a farm wagon moved by mechanical as well as by animal power.'' On appeal from the judgment after trial on the merits, it was held that the jury properly found for defendants, because the evidence did not show that the automobile was used as an ordinary farm wagon was used. (*People* v. *Corder*, 91 Colo. 383, 15 Pac. (2d) 621.)

In *Malone* v. *Kennedy*, (Tex. Civ. App.) 272 S. W. 509, 510, the court held that a 3½-ton truck was exempt as a wagon, saying: ''The rule is well established that exemption statutes shall be liberally construed so as to effectuate the policy and purposes of such legislation. The laws of this state exempt to the head of each family, among other things, one wagon and one carriage or buggy. (Art. 3785, Vernon's Sayles' Civil Statutes.) In construing this law, it has been held that within the meaning and intent of the law, an automobile was a carriage. (*Parker* v. *Sweet*, 60 Tex. Civ. App. 10, 127 S. W. 881; *Peevehouse* v. *Smith*, (Tex. Civ. App.) 152

S. W. 1196.) The carriage or buggy and the wagon were then the common vehicles in use and each was exempted to a family. The legislature believed that a vehicle used for hauling freight and heavy commodities was necessary for the head of the family, and designated the wagon as exempt because it was the vehicle then in use for that purpose. The use of a truck is of the same character and serves the same purpose as a wagon. In making the exemption, the legislature had in mind the use or purpose to which the vehicle was put, rather than the specific character of the vehicle named in the Act.''

Under statutes passed before the automobile came into existence, an automobile has generally been held to be a ''vehicle or a carriage,'' when the latter only were named in the exemption statutes. (Huddy on Automobiles, 8th ed., secs. 8 and 9; *First Nat. Bank of Mason City* v. *Larson*, 213 Iowa, 468, 239 N. W. 134; *Lames* v. *Armstrong*, 162 Iowa, 327, 144 N. W. 1, Ann. Cas. 1916B, 511, 49 L. R. A. (n. s.) 691; *Farmers' Elevator & Livestock Co.* v. *Satre*, 196 Iowa, 1076, 195 N. W. 1011; *Shepard* v. *Findley*, 204 Iowa, 107, 214 N. W. 676; *Patten* v. *Sturgeon*, 214 Fed. 65, 130 C. C. A. 505; *Laning* v. *Langford Inv. Co.*, (Tex. Civ. App.) 36 S. W. (2d) 1079; *Spangler* v. *Corless*, 61 Utah, 88, 211 Pac. 692, 28 A. L. R. 72; *Parker* v. *Sweet*, 60 Tex. Civ. App. 10, 127 S. W. 881.)

It has been held that a statute regulating persons traveling with a team includes those traveling by automobile. (*American Mutual Liability Ins. Co.* v. *Witham*, 124 Me. 240, 127 Atl. 719.)

The cases on the subject are not uniform. There are cases holding that an automobile is not a wagon. (*Prater* v. *Riechman*, 135 Tenn. 485, 187 S. W. 305; *Whitney* v. *Welnitz*, 153 Minn. 162, 190 N. W. 57, 28 A. L. R. 68.)

The legislature was not so much concerned with the name of the thing exempted as it was with the use to which it was put. It is clear from the statute that the legislature intended to provide for the farmer an exemption of the thing used as a means of conveyance. The suggestion that the legislature has not seen fit to amend section 9428 so as to specifically name

the automobile as one of the exempted articles is not of controlling importance. It is only in recent years that the automobile has been extensively used to take the place of the farm wagon. The statute required no amendment in order to exempt the automobile, which in its use has supplanted what was formerly called the wagon.

Where, as here, the automobile has taken the place of and serves the same purpose as the wagon, a liberal construction of the statute with the view of carrying out its object and purpose, impels us to the conclusion that the automobile in question is exempt as a wagon within the meaning of section 9428, supra, and that the trial judge properly so held.

The judgment is accordingly affirmed.

ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY, Dissenting: Now that Chapter 120, Laws of 1933, is in force, this case can be of little consequence to any but the litigants; but it should be decided correctly.

The plaintiff is a married woman, operating a farm jointly with her husband. She owns the automobile. It seems that she is the head of a family ''within the meaning and provisions of the exemption laws.'' As stated in the majority opinion, the only question presented is whether, under the facts, the automobile was exempt from execution under section 9428, Revised Codes 1921. The question would be easily answered if we refrained from legislation, which this court has said many times is the exclusive province of the legislature.

Section 9427 exempts from execution ''all wearing apparel of the judgment debtor and family; also all chairs, tables, desks, and books to the value of two hundred dollars; and also all necessary household, table, and kitchen furniture of the judgment debtor, including one sewing-machine, stoves, stove-pipes, and stove furniture, heating apparatus, beds, bedding, and bedsteads, and provisions and fuel provided for individual or family use sufficient for three months; and also one horse, saddle, and bridle, two cows and their calves, four hogs and

fifty domestic fowls, and feed for such animals for three months, one clock, and all family pictures.''

There are certain reservations to the foregoing, but they are not material to this controversy.

Section 9428 provides that, in addition to the property mentioned in section 9427, ''there shall be exempt to all judgment debtors who are married, or who are heads of families, the following property: 1. To a farmer: Farming utensils or implements of husbandry, not exceeding in value six hundred dollars; also, two oxen, or two horses or mules, and their harness, one cart or wagon, set of sleds, and food for such oxen, horses, cows, or mules for three months. * * * ''

The real question before us is whether a Ford automobile is a cart or a wagon. Of course, it is neither. How can anyone so construe the statute unless he chooses to follow his own notion of what the statute ought to say, rather than what it does say. I conceive it to be my duty to construe the law as it is, not as I might prefer it to be.

In *McManus* v. *Fulton,* 85 Mont. 170, 278 Pac. 126, 134, 67 A. L. R. 690, we observed that justice ''is not the fiat of the individual judge following his own philosophy, but is in a legal sense 'that end which ought to be reached in a case by the regular administration of the principles of law involved' as applied to the facts.' (*Meeks* v. *Carter,* 5 Ga. App. 421, 63 S. E. 517; *City of Sioux Falls* v. *Marshall,* 48 S. D. 378, 45 A. L. R. 447, 204 N. W. 999; *Nelson* v. *Wilson,* 81 Mont. 560, 264 Pac. 679.)''

This court, following the statute, has said on numerous occasions that in the construction of a statute the business of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted. (Sec. 10519, Rev. Codes 1921.) '' 'Our duty is not to enact, but to expound, the law, not to legislate, but to construe legislation; to apply the law as we find it, to maintain its integrity as it has been written by a co-ordinate branch of the state government.' (*Cooke* v. *Holland Furnace Co.,* 200 Mich. 192, 166 N. W. 1013,

L. R. A. 1918E, 552.)'' (*Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616, 617; *State ex rel. Federal Land Bank* v. *Hays*, 86 Mont. 58, 282 Pac. 32.)

The theory upon which it is announced that an automobile is a wagon rests upon the doctrine of liberal construction, resulting in egregious fallacy. Section 4, Revised Codes 1921, provides in part, ''The Codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice,'' and has been a guiding rule of this court in the construction of statutes. The present members of the court are in sympathy with it by inclination and practice. But many courts seem to have lost sight of certain fundamentals of statutory construction in their desire to be ''liberal,'' and have completely overlooked the meaning of the phrase ''liberal construction.''

It has been the rule from the first in this court that statutes enacted in pursuance of the constitutional mandate which declares that ''the legislative assembly shall enact liberal homestead and exemption laws'' should be liberally construed. Mr. Chief Justice Pemberton said so in *Ferguson* v. *Speith*, 13 Mont. 487, 34 Pac. 1020, 40 Am. St. Rep. 459, and I said so in *Dayton* v. *Ewart*, 28 Mont. 153, 72 Pac. 420, 98 Am. St. Rep. 549, and the cases cited in the majority opinion on the point show that the rule has been consistently adhered to.

Liberal construction does not mean an enlargement or a restriction of a plain provision of a written law. If a provision of a statute is plain and unambiguous, it is the duty of the court to enforce it as it is written. (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878; *State ex rel. Public Service Commission* v. *Brannon*, 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020.) ''If it is ambiguous or doubtful, or susceptible of different constructions or interpretations, then such liberality of construction is to be indulged in as, within the fair interpretation of its language, will effect its apparent object, and promote justice.'' (*In re Jessup's Estate*, 81 Cal. 408, 21 Pac. 976, 22 Pac. 742, 745, 1028, 6 L. R. A. 594.)

In *Osterholm* v. *Boston & Montana etc. Min. Co.*, 40 Mont. 508, 107 Pac. 499, 502, this court, speaking through Mr. Justice Smith, said: "It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend their meaning. Statutes should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. (*McCluskey* v. *Cromwell*, 11 N. Y. 593; *Benton* v. *Wickwire*, 54 N. Y. 226.) The supreme court of Mississippi has said: 'A primary rule of construction is that the legislature must be assumed to have meant precisely what the words of the law, as commonly understood, import; and this may be said to be the fundamental and controlling rule of construction.' (*Lemonius* v. *Mayer*, 71 Miss. 514, 14 So. 33. See, also, *Green* v. *Weller*, 32 Miss. 650.)"

In Lewis' Sutherland on Statutory Construction, section 589, page 1085, it is said: "A statute extends no further than it expresses the legislative will. When it is held to embrace a case which is within its spirit, though not within its letter, it is not meant that the courts have authority to extend a statute to cases for which it does not by its words provide, or beyond the sense of its language. A statute is a written law, and it cannot be construed to have a sense and a spirit not deducible from its provisions. It is a general rule that courts must find the intent of the legislature in the statute itself. Unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction; the courts cannot arbitrarily subtract from or add thereto."

When the legislative assembly said "cart or wagon," it meant just what it said; and, in view of the fact that the cart or wagon could not be drawn without animals, and the animals could not be kept without feed, food for the animals for three months was likewise exempted. It is suggested that, if the majority achieves the judicial metamorphosis which will result

from its opinion, it should not stop short of providing gasoline for a period of three months for the automobile now denominated a wagon.

It is idle to cite cases upon statutes dissimilar from ours as authority in construing ours. As was said by Mr. Chief Justice Brown, in *Whitney* v. *Welnitz*, 153 Minn. 162, 190 N. W. 57, 58, 28 A. L. R. 68, where the court held that an automobile could not be classified as a "wagon, cart or dray": "The authorities on the subject are not in full harmony, though perhaps no substantial conflict will be found when the decisions of the different courts are viewed in the light and purpose of the particular statutes involved and construed. They are collected and cited in Berry on Automobiles (3d Ed.), section 1439, and Huddy on Automobiles, sections 8–11. We are cited to no case involving an exemption statute like that of this state, wherein it has been held that the automobile comes within the class of vehicles commonly known as wagons; though several of the cited cases classify it with the carriage or vehicle. (*Prater* v. *Riechman*, 135 Tenn. 485, 187 S. W. 305; *United States* v. *One Automobile*, (D. C.) 237 Fed. 891; *Mallory* v. *Saratoga Lake Bridge Co.*, 53 Misc. 446, 104 N. Y. Supp. 1025.)"

I do not find a single case upon an identical statute that supports the view of the majority, although the Utah statute is close. (*Spangler* v. *Corless*, 61 Utah, 88, 211 Pac. 692, 28 A. L. R. 72.)

Many decisions are cited in the majority opinion construing the word "vehicle." That word is not used in subdivision 1 of the statute we are construing. "Where a specific article of personal property is made exempt, the courts are not authorized to extend the exemption by construction to any other or different article." (25 C. J. 11.)

In *Crown Laundry & Cleaning Co.* v. *Cameron*, 39 Cal. App. 617, 179 Pac. 525, a launderer claimed a Ford automobile as exempt under a statutory provision which exempted from execution "two horses, two oxen or two mules, and their harness, and one cart or wagon, one dray or truck, one coupe, one hack, or carriage, for one or two horses." The court

denied the claim, saying, among other things: "If the legislature intended that a motor vehicle should be exempt from attachment, we think that it would have so declared in plain terms, and that for the courts to add to the statute any articles not enumerated would in effect be judicial legislation. Counsel for respondent cites an Iowa case (*Lames* v. *Armstrong*, 162 Iowa, 327, 144 N. W. 1, 49 L. R. A. (n. s.) 691, Ann. Cas. 1916B, 511), in which it was held there that an automobile was exempt under the terms of the Iowa statute. It is sufficient to say that the statute there considered contained the general term, 'or other vehicle,' which makes it quite different from the California law. The decision, to our mind, is not applicable. While it is the established policy of the law to construe liberally the exemption statute, such construction cannot go to the extent of adding articles which the legislature has omitted to include." (And see *Conlin* v. *Traeger*, 84 Cal. App. 730, 258 Pac. 433; *Prater* v. *Riechman*, supra; Huddy's Automobile Law, p. 153; 25 C. J. 58.)

Automobiles have been in use in Montana for thirty years, and the legislature has been conversant with their use upon farms for twenty years at least. We find that section 9427, relating to property exempt from execution, was amended in 1921, and that section 9428 was amended in 1905, re-enacted in 1907, and again re-enacted in 1921. When the legislature got ready to exempt automobiles, it did so. Chapter 120, Laws of 1933, declares: "An unmarried man or woman, over the age of sixty years, shall be allowed the same exemptions as are granted to the head of a family, under the laws of the State of Montana." (Sec. 1.) "In addition to all other exemptions, the following property is exempt from execution, where the debtor is the head of a family, or over sixty years of age: One truck or automobile of the value of not more than Three Hundred Dollars." (Sec. 2.) And in section 3 it is declared that "nothing herein contained shall be interpreted or construed as repealing any provisions of Sections 9427 or 9428 of the Revised Codes of Montana of 1921"; and section 4 provides, "All Acts or parts of Acts in conflict herewith are hereby repealed."

Section 3 obviously applies generally to sections 9427 and 9428, which give exemptions only to those who are married or who are heads of families, and to subdivision 6 of section 9428. It was necessary to enact the saving clause expressed in section 3 in order that innumerable conflicts might be avoided.

The absurdity of construing the wagon mentioned in subdivisions 1 and 6 of section 9428 to mean an automobile now gives to the exemption claimant two automobiles, the first, the metamorphosis, without reference to value, and the other, the one exempted by Chapter 120 of a value not exceeding $300. Thus a man may claim as exempt his Cadillac (*Stichter* v. *Southwest National Bank*, (Tex. Civ. App.) 258 S. W. 223, 225) as his wagon and his Ford as his automobile.

The important feature of this case is not whether we shall rest the decision upon the untenable theory of "liberal construction," but whether this court shall arrogate to itself power which it does not possess, a power which belongs exclusively to a co-ordinate branch of the government. I propose to allow the legislative assembly to amend statutes if amendment be needed.

MR. JUSTICE STEWART: I concur in the above views of MR. CHIEF JUSTICE CALLAWAY.

Rehearing denied February 15, 1934, MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE STEWART dissenting.