**In re Thomas Lee SHUMAKER, f/d/b/a Rocky Mountain Packing Company, Debtor.**

**Bankruptcy No. 90–41106–007.**

United States Bankruptcy Court, D. Montana.

March 6, 1991.

Robert Drummond, Marra, Wenz, Johnson & Hopkins, P.C., Great Falls, Mont., for debtor.

William A. Squires, Matteucci, Falcon, & Squires, P.C., Great Falls, Mont., for United Food and Commercial Workers Union.

Ross P. Richardson, Butte, Mont., Trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case, United Food and Commercial Workers Union (Union), an unsecured creditor, has filed timely objections to claims of exemption sought by the Debtor.[1] The matter has been submitted on stipulated facts and Briefs by the parties have been filed in support of their respective positions.

The stipulated facts are:

1. That the Debtor, Thomas Lee Shumaker, is 47 years old, and filed his Chapter 7 bankruptcy on July 28, 1990.

2. That the Debtor, Thomas Lee Shumaker, is holding an individual retirement account having a net value of $33,247.85, not including penalties or cost of early withdrawal, consisting of securities valued at $29,011.25, and cash in the amount of $4,236.60 at the time of filing as demonstrated by Exhibit "A".

3. That the Debtor opened his individual retirement account on November 3, 1987. The Debtor completed the Account Information Form and Application (Exhibit "B") to open the account. (Exhibit "C").

4. A copy of the D.A. Davidson & Co. IRA Disclosure Statement (Exhibit "D") controls the account of the Debtor.

5. That the Debtor rolled over $10,-358.39 into his individual retirement account on November 3, 1987. The proceeds from this figure represented funds held in the Debtor's Oscar Mayer Pension and two other IRAs. (Exhibit "E").

6. That upon discontinuation of the business of Rocky Mountain Packing Company, the Debtor rolled over his 401K plan into the IRA. That rollover was of $3,350.89 on June 16, 1990. (Exhibit "F"). That no other contributions have been made to the IRA other than the contributions referred to above.

7. That subsequent to the filing of the Petition, believing the IRA to be exempt property, the Debtor cashed a portion of his IRA totaling $16,135.37 and used it to finance the purchase of a new vehicle. (Exhibit "G").

8. That at the time of filing the Petition in bankruptcy, the Debtor was a ranch hand employed by Phalen Ranch. On the 24th of July, the Debtor had surgery on his shoulder and has been unemployed ever since, earning $124.50 per week on workers' compensation. The Debtor intends to return to employment as a ranch hand.

9. That the Debtor has testified at the First Meeting of Creditors that he used a personal computer in the business to keep production records of livestock on the ranch he was employed on, even though such record keeping is not a requirement of

---

1. The Trustee has joined in the objections, although the Trustee's objections are tardy under Bankruptcy Rule 4003(b). This decision is issued on the basis of the creditor's objections.

the Debtor's employment. Additionally, all of the former Rocky Mountain Packing Company records are kept on his computer.

10. The parties stipulate that in the event that the Montana exemption statute is found unconstitutional, leave shall be granted the Debtor to amend his schedules to claim the IRA as exempt under federal exemptions laws, and the creditor reserves all right applicable thereto.

In the bankruptcy Schedules filed by the Debtor, under Schedule B–4, Debtor claimed the following exemptions:

| Type of Property | Value Claimed Exempt |
|---|---|
| Household goods | $1,710.00 |
| Automobile– 1988 Chevrolet Pickup | 8,867.86 |
| Boat– Duracraft Canoe | 2,500.00 |
| Office equipment– computer | 2,000.00 |
| Tangible personal property– D.A. Davidson Account (120 shares General Electric) | 5,400.00 |
| Tangible personal property– Oscar Mayer Pension | 5,000.00 |
| Stock and company interest– 401K Rocky Mountain Packing Company Plan | 2,039.76 |
| Stock and company interest– D.A. Davidson Account | 6,600.00 |

By Order dated October 25, 1990, the Debtor was allowed to amend his Schedules to reflect, among other things, that the various IRA and pension accounts listed above had been combined into one IRA account by the Debtor pre-Petition, and that said single IRA was now being claimed as exempt by the Debtor under Schedule B–4.

Additionally, the Debtor amended Schedule B–4 to claim various items of household furnishings as exempt. In his Brief in Support of Declarations of Exemptions filed herein on November 2, 1990, the Debtor acknowledged that the creditor's objections to the exemptions in the household furnishings were well taken to the extent that the value of the exemption exceeded $600.00 worth of household furnishings as exempt, and accordingly, those items of personal property listed in Schedule B–3 which are not claimed as exempt in Schedule B–4 must be turned over to the Trustee for liquidation and distribution to the creditors herein. Those items of property are as follows:

| Item | Value |
|---|---|
| Bar Stools (4) | $ 50.00 |
| Coffee Table | 10.00 |
| Dining Room Chairs (2) | 20.00 |
| Dresser | 10.00 |
| Dresser (water damaged) | 25.00 |
| Dresser and Cabinet | 50.00 |
| End Table | 10.00 |
| Gun Vault (homemade) | 80.00 |
| Ladder Back Chairs (2) | 100.00 |
| Recliner (plastic) | 20.00 |
| Recliner | 25.00 |
| Rocker (wood) | 25.00 |
| Sofa | 25.00 |
| Stuffed Chair | 10.00 |
| Stuffed Chair | 25.00 |
| Waterbed | 50.00 |

The Debtor's original Schedules also sought to exempt a Duracraft canoe. In his amendments and subsequent Brief, the Debtor also conceded the validity of the Union's objection to this exemption. The Duracraft canoe is no longer claimed exempt on the Debtor's amended Schedule B–4 and therefore must also be turned over to the Trustee for liquidation.

The Debtor has also amended his Schedule B–4 to reflect a $1,200.00 vehicle exemption. However, said vehicle was purchased post-petition with proceeds from the Debtor's IRA account. (Stipulation of Fact, paragraph 7). Accordingly, this exemption is tied directly to challenge against the IRA account and need not be addressed by the Court. The remaining issues raised by the Union's objection deal with the claim of exemption of a computer under Section 25–13–609(3), Mont.Code Ann., as a tool of the trade and the exemption of the Debtor's IRA account.

As to the computer, under the agreed facts, the Debtor uses the computer in his occupation as a farm laborer to keep production records on his employer's ranch, even though such record keeping is not a requirement of the Debtor's employment. The specific exemption under amended Schedule B–4 lists the computer as "office equipment" valued at $2,000.00.

Section 25–13–609(3), Mont.Code Ann., allows a personal exemption from execution of—

"(3) the judgment debtor's interest, not to exceed $3,000 in aggregate value, in

any implements, professional books, and tools, of the trade of the judgment debtor or a dependent of the judgment debtor;"

An exemption statute is to be liberally construed for the benefit of the Debtor. *McMuller v. Shields*, 96 Mont. 191, 29 P.2d 652 (1944); *In re Frazier*, 5 F.Supp. 903 (D.Mont.1934). The Montana legislature in 1987 changed many of Montana's exemption statutes, particularly those dealing with personal property items, by setting aggregate dollar amounts on all classifications of personal property and eliminating any requirement of necessity. *See, In re Neutgens*, 7 Mont.B.R. 43 (Bankr.Mont. 1989) for a discussion of Montana new exemption statutes. And, after this Court's decision of *In re Mutchler*, 95 B.R. 748, 6 Mont.B.R. 388 (Bankr.Mont.1989), the 1989 Montana legislature again changed § 25–13–609(3) to reduce the value of each item of personal property listed in such sub-section to an "aggregate" value of $3,000.00. *Id.* at 757, Ftn. 1.

I find the language of *In re Siegman*, 757 P.2d 820 (Okla.1988), certified to the Supreme Court of Oklahoma by the Oklahoma bankruptcy court on the issue of interpretation of the Oklahoma tool of the trade exemption statute, to be instructive because of the close similarity in language (except as to value) of the Montana and Oklahoma exemption statutes.

"The intent and purpose of the statute in question is apparent on its face. The statute reflects an intent to insure that the items necessary to allow a person to continue to work to support himself are secured to that person exempt from seizure and sale. The statute reflects no limitation in terms of type of equipment, size, source of power, mobility or mode of operation in regard to the tools or apparatus which would come within the coverage of this limitation." *Id.* at 822.

After approving of the holding of the Montana Supreme Court in *McDonald v. Mercill*, 220 Mont. 146, 714 P.2d 132, 135 (1986), the Oklahoma court concluded:

"We now hold that the tools of the trade exemption under 31 O.S.Supp.1987 § 1(A)(6) applies to any property which comes within the scope of the terms tools, apparatus or books, is used in the trade or professional of the debtor or a dependent of the debtor, and is reasonably necessary, convenient or suitable for production of work in that trade or profession regardless of size, source of power, mobility or mode of operation." *Id.* at 824.

Further, *Matter of Knight*, 75 B.R. 838 (Bankr.S.D.Iowa 1987), interpreting a similar Iowa statute on tool of the trade exemption, holds:

"The ubiquity of computers in the business world attests to their importance to the effective and efficient operation of business. * * * The Court acknowledges the trustee's assertion that a computer is not a necessary component of the debtor's insurance business. * * * However, the debtor need not show that the computer is a necessity. * * *, all that need be shown is that the tool or instrument be a 'proper tool or instrument' that is usually adapted to the debtor's employment." *Id.* at 840.

In the present case, the Debtor has satisfied the test. Whether the computer is used by him as a convenient item to perform his trade (although not a necessity of his continued employment), or to keep the tax records of his former business, it is an implement or a tool of the Debtor's trade, and as such, is exempt under § 25–13–609(3), Mont.Code Ann. The Union's objection to the exemption is therefore without merit and is denied.

■ The final issue raised by the Union's objections presents the issue of the constitutionality of Section 31–2–106(3), Mont. Code Ann., under which the Debtor exempts his IRA account. The challenge is a sequel to this Court's decision of *In re Locke, Jr.*, 120 B.R. 563, 9 Mont.B.R. 31 (Bankr.Mont.1990). *Locke* held that Title I of the Employee Retirement Income Security Act (ERISA) did not pre-empt Section 31–2–106(3) in the case of an IRA exemption, so that the Debtor may claim an exemption under that state statute to an IRA account in existence on the bankruptcy pe-

tition date. *Locke* noted in Ftn. 3 that one court had held a state's enactment of exemptions of an IRA pension account where the statute governed rights to exemption of only bankruptcy Debtors was unconstitutional. *In re Mata*, 115 B.R. 288 (Bankr. Colo.1990). The union now relies on *Mata* and *In re Lennen*, 71 B.R. 80 (Bankr.N.D. Cal.1987) to sustain its argument that Montana's state exemption statute § 31–2–106(3) applies only in bankruptcy and is invalid as applicable only to Debtors filing bankruptcy and not other Debtors in the state. *Mata*, at 291; *Lennen*, at 83. The Union further argues that § 31–2–106(3) violates the equal protection clause of the U.S. and Montana Constitutions. Finally, the Union states that if § 31–2–106(3) is declared constitutional, to the extent that Debtor's contributions to his IRA during the one-year period preceding the petition date exceed 15% of Debtor's gross income, said sum is non-exempt by reason of the specific statutory language. The Debtor resists each constitutional challenge and asserts that the IRA is totally exempt. The Court and Union gave notice to the Attorney General of the State of Montana pursuant to 28 U.S.C. 2403(b) of his right to intervene in this matter by reason of the constitutional challenge to a state statute, but the Attorney General has not intervened.

The relevant statute is as follows:

**31–2–106. Exempt property—bankruptcy proceeding.** No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. 522(d). An individual may exempt from the property of the estate in any bankruptcy proceeding:

(1) That property exempt from execution of judgment as provided in 19–3–105, 19–4–706, 19–5–704, 19–6–705, 19–7–705, 19–8–805, 19–9–1006, 19–10–504, 19–11–612, 19–13–1004, 19–21–212, Title 25, chapter 13, part 6, 33–7–511, 33–15–512 through 33–15–514, 35–10–502, 39–51–3105, 39–71–743, 39–73–110, 53–2–607, 53–9–129, Title 70, chapter 32, and 80–2–245;

(2) the individual's right to receive unemployment compensation and unemployment benefits; and

(3) the individual's right to receive benefits from or interest in a private or governmental retirement, pension, stock bonus, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, excluding that portion of contributions made by the individual within 1 year before the filing of the petition in bankruptcy which exceeds 15% of the individual's gross income for that 1–year period, unless:

(a) the plan or contract was established by or under the auspices of an insider that employed the individual at the time the individual's rights under the plan or contract arose;

(b) the benefit is paid on account of age or length of service; and

(c) the plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(b), 408, or 409).

As can be readily discerned from the statute, Montana has opted-out of the federal exemptions allowed under 11 U.S.C. § 522(d). Subsection (1) contains a compilation of existing Montana State statutes applicable to a plethora of public retirement, disability insurance, public assistance benefits, general exemptions of personal property, and the Montana homestead exemption law. Subsection (2) provides exemptions for unemployment compensation benefits; which is a right granted non-bankruptcy Debtors under § 39–51–3105, Mont. Code Ann. Subsection (3) grants exemptions, with some restriction, in private and public benefit plans. Subsection (3) closely parallels the federal bankruptcy exemption found in § 522(d)(10)(E) of the bankruptcy Code, except it does not include any limiting words "reasonably necessary for the support of the Debtor." It is conceded by the parties that a non-bankruptcy Debtor does not enjoy any exemption rights in an IRA retirement account under Montana law. Accordingly, to a non-bankruptcy Debtor, his IRA account would be subject

to levy and attachment by creditors. The Union argues that result violates the doctrine of geographic uniformity set forth in *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1901), which decision forms the basis of the *Mata* and *Lennen* holdings.

*Moyses* held, in interpreting Article I, Section 8, Cl. 4 of the U.S. Constitution that Congress has the power "to establish ... uniform laws on the subject of Bankruptcies throughout the United States":

> "We * * * hold that the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditors if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain particulars differently in different states." *Id.* at 190, 22 S.Ct. at 861.

In the *Mata* and *Lennen* cases, interpreting Colorado and California exemption statutes, respectively, which provided exemptions in bankruptcy cases only, the courts held:

> " 'Measured by the geographic uniformity test, the exemption scheme of section 703.140 [Cal.Civil Code] must fail. The exemptions made available there apply *only* to a debtor in federal bankruptcy court; they are not available to a next-door neighbor who has not filed a bankruptcy petition. In addition, the statutory working of section 522(b)(2)(A) that the debtor may claim property as exempt under "state or federal law that is applicable" should not, in view of constitutional considerations, be interpreted so liberally as to allow a state exemption scheme which is applicable only in federal bankruptcy court.' *Ibid.* at 83.

This court concurs with the result reached by the *Lennen* court. The State of Colorado may fully adopt exemption statutes which serve to exempt a judgment debtor's assets from levy and exemption by judgment creditors in this state. These statutes will also allow debtors to exempt those same assets from the reach of the trustee in bankruptcy pursuant to 11 U.A.C. § 522(b)(2)(A). That is the scheme mandated and approved by Congress. However, the State of Colorado cannot, under the guise of adopting an exemption statute, adopt a federal bankruptcy exemption for residents who file bankruptcy." *Mata*, at 291.

Reflecting upon *Mata* and *Lennen*, I think each case misconstrues *Moyses* and overlooks a significant constitutional doctrine which has been articulated in *Matter of Sullivan*, 680 F.2d 1131 (7th Cir.1982), *cert. denied*, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). *Sullivan*, in discussing the opt-out provision of § 522(b)(1) of the 1978 bankruptcy Code,[2] which the Montana legislature implemented in § 31–2–106, and whether Congress has the power to permit states to set their own bankruptcy exemption levels, states:

> "The final argument urged by the debtors is that Congress lacks such power. They urge that section 522(b)(1) represents an impermissible delegation of Congressional power. The appellants overlook the long-established principle that the states retain the power to enact bankruptcy laws so long as they do not conflict with federal bankruptcy legislation. In *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819), Chief Justice Marshall stated:

>> '[T]he power granted to congress may be exercised or declined, as the wisdom of that body shall decide. If in the opinion of congress, uniform laws concerning bankruptcies ought not to be established, it does not follow that partial laws may not exist, or that state legislation of the subject must cease. It is not the mere existence of the power, but its exercise, which is incom-

---

**2.** *In re Granger*, 754 F.2d 1490 (9th Cir.1985) explains a state may opt not to allow its residents to claim federal exemptions set forth in 11 U.S.C. § 522(d) by doing just what Montana has done pursuant to § 522(b)(1), i.e., declare by state law that § 522(d) exemptions are not allowed in bankruptcy. At least 36 states have implemented § 522(b)(1) so as to permit a state to enact its own exemption scheme to be used in place of § 522(d). *In re Ondras*, 846 F.2d 33 (7th Cir.1988).

patible with the exercise of the same power by the states. It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the states.'

17 U.S. (4 Wheat.) at 195–96. Under *Sturges*, Illinois has the power to establish exemption provisions for bankrupts of that State so long as the state law does not conflict with the federal bankruptcy laws. As we note in Section III, *supra*, there is no conflict between the Illinois exemption provisions and section 522(d) because of the express language of section 522(b)(1). Where a State is thus exercising its own power, no unconstitutional delegation of Congressional power can be found. *See, e.g., Prudential Insurance Co. v. Benjamin*, 328 U.S. 408, 439–40, 66 S.Ct. 1142, 1160, 90 L.Ed. 1342 (1946).

Further, in *Moyses*, the Supreme Court held that the exemption provisions of the 1898 Act did not constitute an unconstitutional delegation. The Court stated: 'Nor can we perceive in the matter of exemptions, priority of payments, and the like, any attempt by Congress to unlawfully delegate its legislative power.' 186 U.S. at 190, 22 S.Ct. at 861. We find no distinction, relevant to the delegation argument, between the 1898 Act and the Code. *Moyses*, supported by the *Sturges* and *Prudential* opinions, persuades us that the debtors' delegation argument must fail." *Id.* at 1137.

It seems to this Court that *Mata* and *Lennen* confuse geographic uniformity under Article I, Section 8, with the constitutional power of a state to enact bankruptcy exemption statutes so long as the state law does not conflict with the federal scheme. Congress' enactment of § 522(b)(1), described at length in *Sullivan, Id.* at 1135–1136, was a clear "signal" to each state, in accordance with the geographic uniformity doctrine, that each state could validly adopt its own bankruptcy exemption scheme. Such concept is what Montana elected to implement, and in doing so satisfies the constitutional power of a state to enact bankruptcy laws, where Congress has ef-

fectively not acted. *In accord, In re McManus*, 681 F.2d 353 (5th Cir.1982), *reh'g denied*, 689 F.2d 190 (5th Cir.1982); *In re Holt*, 84 B.R. 991, (Bankr.W.D.Ark.1988) and cases cited therein. Therefore, the underlying premise of *Mata* and *Lennen* that it is not permissible for states to seek to enact two different levels of exemptions, one applicable in bankruptcy and one without, simply misstates the applicable constitutional power of a state to enact bankruptcy laws where Congress has not sought to act. I decline to follow the holdings of *Mata* and *Lennen* relied upon by the Union on this issue.

The final constitutional challenge that § 31–2–106(3) violates the equal protection clause of the U.S. and Montana Constitutions (U.S. Const.Amend. 14, Sec. 1; Mont. Const. Art. II, Sec. 4) is likewise without merit. The Union says that the pertinent statute creates two separate classes of Debtors who are in like circumstances and treats them differently, without any rational basis.

■ The basis of equal protection is that the challenged classification must be rationally related to a legitimate government interest. *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Stated differently, the ultimate question in any classification challenge is whether the statute has some reasonable basis, not whether some were excluded from such class who may well have been included.

"The proper test for classification at issue here is the rational basis test. As explained by the United States Supreme Court, to survive scrutiny under the rational basis test, classifications must be reasonable, not arbitrary, and they must bear a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. *Eisenstadt v. Baird*, (1972), 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349, 359." *Montana Stockgrowers v. Dept. of Revenue*, 238 Mont. 113, 777 P.2d 285, 288 (1989).

■ I find the Montana exemption statute, which applies only to bankruptcy, passes constitutional muster under the equal protection clause of both the U.S. and Mon-

tana Constitutions. The reasonable basis of § 31–2–106 is premised on the rationale that bankruptcy petitioners are entitled to a "fresh start." The matter is ably discussed in *Matter of Bloom*, 5 B.R. 451, 453 (Bankr.N.D.Ohio, 1980), which holds:

"Unquestionably, the Ohio Legislature treated bankrupt and non-bankrupt debtors differently. The rationale for the distinction is to provide the former with the requisite 'fresh start'. Being fully aware of the unique problems confronting the bankrupt debtors' quest for financial rehabilitation, the Legislature employed reasonable classification of persons to accomplish this end. The Legislature was cognizant that the commencement of a bankruptcy case creates an estate comprised of all of the debtor's property (Section 541, T.11 U.S.C.A.). Unlike non-bankrupt debtors, the financially distressed bankrupt is in a substantially different posture. He literally relinquishes his earthly possessions without which he is impecunious and relegated to welfare status to his degradation and to the detriment of the tax payers. The alleviation of this onus is a legitimate State interest which justifies a rational basis for resuscitating the bankrupt and relieving the State of an added burden.

To provide bankrupt debtors the necessary 'fresh start' to regain self-respect and resume a productive role in the economy, the Ohio Legislature was compelled to draw the distinction between debtors. 'That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy.' *Allied Stores of Ohio, Inc. v. Bowers, Tax Commissioner*, 358 U.S. 522, p. 528, 79 S.Ct. 437, p. 441, 3 L.Ed.2d 480 (1959).

'So long as classifications have a real and substantial basis they can not be said to be violative of the equal protection clause even though the lines drawn there are very narrow.' (cases cited) *State v. Greater Portsmouth Growth Corp.*, supra, 7 Ohio St.2d [34] 37, 218 N.E.2d [446] 450 [1966], also *McClellan v. Shapiro*, 315 F.Supp. 484 (D.C.Conn. 1970)."

It is clear § 31–2–106(3) treats all bankruptcy petitioners alike and has a rational basis. Accordingly, the constitutional challenge by the Union under the equal protection clause is rejected.

Under the agreed facts, the Debtor made a contribution to the plan within one year of the bankruptcy Petition date of $3,350.89. I cannot determine whether this contribution exceeds a sum in excess of 15% of the gross earnings of Debtor within the one year pre-petition. Accordingly, the Union shall be entitled to submit an Amended Objection to any sum over the allowable 15% amount.

IT IS ORDERED the objections to Debtor's claim of exemptions by the United Food and Commercial Workers Union are denied as to the claim of exemption in a computer and the constitutional challenge to the individual retirement account under § 31–2–106(3), with leave to object to any sum in excess of 15% gross income within one year of the bankruptcy Petition, and sustained to items of household goods and a canoe listed in this Order.