## MILLER v. DONALD.

### No. 15187.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 17, 1950.

Rehearing Denied Dec. 22, 1950.

McDonald & Anderson, of Wichita Falls, for appellant.

Paul Donald, and T. B. Coffield, both of Bowie, for appellee.

SPEER, Justice.

Appellee J. M. Donald, a practicing attorney at Bowie, Texas, filed this suit against appellant E. D. Miller to recover title to one-half of the mineral rights in a described 40 acres of land in Montague County, Texas, alleging, among other things, that while the record title was in appellant, the equitable title was held by him in trust for appellee.

The petition detailed asserted facts showing that on January 1, 1944, one J. M. Nored came to appellee's office and offered to sell an oil and gas lease and one-half mineral right in the described 40 acres of land for $800; that appellee, being short of ready cash, went to appellant, then in a room or office separate and apart from that in which negotiations between appellee and the seller had been carried on, and proposed to appellant that if he would put up the cash the lease and mineral deed would be taken in his name and when sold he should be reimbursed for his investment and all profits would be divided between the two; that appellant agreed to the arrangement and appellee closed the deal with the seller. Appellant then left the office of appellee and the latter drew up the lease and mineral deed contracts, naming appellant as lessee and grantee respectively. That in the afternoon appellant returned to appellee's office and informed him he was short of cash and could not go on with the deal; that the papers had then been drawn and the seller had gone home to another town in the county; that appellee told appellant he had promised the seller to make the purchase and felt bound to do so, and asked appellant to permit the purchase by appellee to be closed with the papers all drawn naming appellant lessee and grantee and that he could hold title in trust for appellee; that appellant agreed this could be done. That with the changed situation appellee had a written statement prepared in his office on his stationery, dated January 1, 1944, addressed to Donald and Donald, attorneys, and signed by appellant, which reads: "Gentlemen: I hold one-half (½) minerals under 40 acres out of the T. Allen Survey, Abstract No. 12, and an oil and gas lease under entire 40 acres for your benefit."

There were further allegations to the effect that after abstracts were compiled and curative matters of title were had, appellee took the instruments to the seller, had them executed and paid the entire consideration.

After certain special exceptions had been filed by appellant, appellee filed a supplemental pleading, repeating much that had been said in his original petition, the supplemental pleading contains this allegation: "That since all the money and consideration was furnished by plaintiff a resulting trust existed and now exists in favor of plaintiff and defendant holds title to said mineral estate in trust for plaintiff who owns the equitable title to said estate by reason of having furnished the entire consideration therefor."

Appellee further alleged, in substance, that subsequent to the time he paid to the seller the entire consideration and thereby procured the execution and delivery of both the lease and mineral deed, he arranged a sale of the leasehold interest to another party and upon request the appellant (in whose name the title stood) executed and delivered to the purchaser an assignment thereof and the purchaser paid the consideration to appellee and appellant never at any time claimed any part of it. That a few weeks prior to filing this suit, appellee requested appellant to convey to him the mineral interest still remaining in appellant's name and he agreed to do so but at the time of filing suit he had not made such conveyance. Prayer was for recovery of the mineral rights and for $80 rentals previously collected by appellant.

Appellant as defendant below answered by general denial and by several special defenses, in which he relied upon the statute of frauds and the Texas Trust Act, as contained in Article 7425b—1 et seq., and also the two, three and four-year statutes of limitation. Vernon's Ann.Civ.St. arts. 5526, 5507, 5529. He further specially an-

swered in substance that he and appellee had on many occasions entered into joint adventures, such as the one here involved, and that on or about January 1, 1944, they agreed to purchase jointly the property here involved but that before closing the deal appellee declined to go through with it and appellant then purchased the lease and mineral rights, paid the full consideration and took title in his own name and has at all times since been the owner of said mineral rights. Denial was made of the statement or memorandum. (hereinabove quoted) concerning the acknowledgement of a trust by appellant and a lack of consideration for any such statement, if one was made. He prayed that appellee take nothing by his suit.

By the pleadings thus summarized, it will be noted that a very definite issue of whether or not some form of trust was raised by appellee and that all such efforts on the part of appellee were vigorously denied and contested by appellant. Each party testified to the facts asserted by him in the pleadings and went to great length to corroborate his contentions. The testimony is lengthy and just as conflicting as the respective pleadings. Any attempt to analyze all the testimony would require much time and result in an opinion all too long. Appellant moved for an instructed verdict and it was overruled.

The jury's verdict was favorable to appellee. Judgment was entered on the verdict and this appeal followed.

The answers to special issues submitted found: (1 and 2) J. M. Donald (appellee) furnished the full amount of money paid to J. M. Nored, seller, for the oil and gas lease and for the mineral deed prior to their delivery by the seller. (3 and 4) Prior to execution and delivery by the seller of the lease and the mineral deed, E. D. Miller (appellant) had agreed to permit them to be taken in his name for the benefit of J. M. Donald (appellee). (5 and 6) E. D. Miller took title to the oil and gas lease and to the mineral deed in question for the sole benefit of J. M. Donald. Conditioned upon affirmative answers to special issues 3 and 4, the jury found: (7 and 8) that

Miller never repudiated his agreement with appellee.

There were other issues submitted conditioned upon the nature of answers made to some of the foregoing issues and since the conditional requests did not require answers, the verdict was returned without answers to those issues. There is no complaint by point of error in this court that the trial court refused to submit the several special issues requested en bloc by appellant.

It will be borne in mind that while there are references in the pleadings to two instruments, executed simultaneously, one an oil and gas lease on the described 40 acres and the other a conveyance of an undivided one-half interest in the mineral rights therein, yet the leasehold interest has been sold and assigned to a third party and is not involved in this suit. Apparently the leasehold interest came into the case for the purpose of showing that appellant claimed no rights therein by reason of the fact that the legal title in both instruments stood in his name, since when he assigned the leasehold interest at appellee's request, appellee received the consideration and appellant claimed no interest in it. In these matters there is no conflict in the testimony. Only the title passing under the mineral deed is involved in this suit.

Appellant's points one, two and three challenge the actions of the court (1) in overruling his special exceptions to the petition wherein it is alleged haec verba the written statement contained in the letter of January 1, 1944, hereinabove quoted; and (2 and 3) in admitting testimony over appellant's objections as to what land the letter referred to, because the letter did not contain sufficient information to be self-explanatory.

Appellant argues under the foregoing points that the offending statement or letter was plead and relied upon by appellee as evidence of an *express* trust (our emphasis) as between the parties, and since the written instrument or letter does not describe the land to be affected nor otherwise identify it, it is insufficient to create an express trust in land and the court should

have sustained his special exceptions to that part of the pleading; and further the court should have sustained his objections to appellee's parol testimony explaining what land was referred to in the letter.

If the record before us had presented a situation that amounted to an express trust in the title, appellant's contentions with respect to these points would be correct. Texas Trust Act, Article 7425b, § 2, V.A. C.S. The cited section of the Act makes it plain that it is not applicable to other types of trusts, including "resulting or constructive" trusts.

Trusts are classified generally as of two kinds—express and implied trusts. 42 Tex. Jur., p. 604, § 6; 9 Tex.Jur., 10 year supp., p. 456, § 6; Lang v. Shell Petroleum Corporation, Tex.Civ.App., 141 S.W.2d 667, affirmed by Supreme Court, 138 Tex. 399, 159 S.W.2d 478.

It is elemental that to create an express trust the legal and equitable titles must be separate, the former being vested in a trustee and the latter in a beneficiary. "An express trust arises 'either by express agreement or by the direct and positive acts of the parties or by some writing or deed.'" 42 Tex.Jur., p. 611, § 10; Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885; Brinkman v. Tinkler, Tex.Civ.App., 117 S.W.2d 139, error refused.

As distinguished from express trusts, implied trusts are those that arise as a matter of law and may embrace resulting and constructive trusts. Where there has been no explicit language used in instruments purporting to create a trust, our courts in the exercise of their equitable powers will infer from what the parties did or said that a trust was intended and such trusts are commonly known as "constructive" or "resulting" trusts. Elbert v. Waples-Platter Co., Tex.Civ.App., 156 S.W.2d 146, error refused, w. m.

A resulting trust is a species of an implied trust arising from what the parties did and not from what they said. Resulting trusts arise as a matter of law when land is purchased with money of one and title is taken in the name of another, the one who furnished the money for the con-

sideration is the equitable owner and the one in whose name title was taken is a mere trustee and holds for the equitable owner. 42 Tex.Jur., pp. 635–637, §§ 34, 35 and 36. A resulting trust arises from the transaction and is not created by contract. Sims v. Duncan, Tex.Civ.App., 195 S.W. 2d 156, error refused; McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171; see also 9 Tex.Jur., 10 year supp., p. 468, § 36 and cases there cited.

In the case of Morrison v. Farmer, Tex. Sup., 213 S.W.2d 813, 815, the court again announced the universally accepted rule of this state in this language: "A resulting trust arises by operation of law when title is conveyed to one person but the purchase price is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner." (Citing authorities.)

It is our conclusion that the trust created by the transaction here involved was a resulting trust and not an express one, and that parol testimony was admissible to show what the parties actually did in connection with the whole deal, especially with reference to who paid the consideration for which the conveyances were made. The trust followed as a matter of law. The letter by appellant above quoted was only a written admission by appellant of what the law would have imputed to him if he had not so admitted it by the written instrument; true, it did not describe the land or identify it other than to say it was "40 acres out of the T. Allen Survey, Abstract No. 12." We see no error in admitting parol testimony to show that the lands referred to were the same as those involved in the conveyances here under consideration. Since the trust was not an express one, all the facts and circumstances surrounding the transaction making it a resulting trust could have been shown by parol testimony if the letter had never been written. In Gray v. Mills, Tex.Civ.App., 206 S.W.2d 278, affirmed by Supreme Court, 210 S.W.2d 985, in a somewhat analogous situation, this court held parol testimony to be admissible.

Appellee alleged and offered substantial testimony that the transaction created a resulting trust in him to the mineral rights here involved, and while the evidence was very conflicting, the jury found the facts relied upon by appellee were true. The three points under consideration must be overruled.

Points four and five complain (4) of the trial court's refusal to give his requested peremptory instruction because, he contends, the admissible evidence of a "parol trust in the land sued for, legal title to which was in appellant, was not clear, satisfactory and convincing," and (5) the trial court erred in overruling appellant's motion for new trial "because the admissible evidence was wholly insufficient to support the judgment for appellee that appellant was holding title to the minerals in 40 acres in the T. Allen Survey of 160 acres in Montague County, Texas, in trust for appellee."

The points above mentioned are based primarily upon the theory that this transaction involved an express trust and since such a trust could not be established by parol testimony, appellant should have had an instructed verdict. We have already expressed our views as to the nature of the trust created, and if we are correct appellant's premise is wrong and we overrule point four.

We also overrule point five for some of the reasons above expressed. We have already emphasized the hopeless conflict in the testimony but when viewed in the light most favorable to the jury's verdict, we must assume that the jury resolved the conflicts in favor of appellee's theory and the testimony offered by him. Such testimony was abundantly sufficient to support the verdict.

The sixth and last point asserts that the trail court abused its discretion in overruling appellant's motion for new trial on the ground of newly discovered evidence "of the witness W. F. Leonard that Nored (the seller) deposited $400 in currency in his bank on January 17, 1944 and of Roy Coffield that his bank had no record that Nored cashed the $800 check, appellant's exhibit Px-4, because this evidence would

very likely result in a jury finding that appellant furnished the money for the mineral deed and oil and gas lease, title to which appellee alleged appellant held in trust for him."

The matters discovered by appellant since the trial and claimed to be new evidence consist in the main, first, that an officer of a Nocona, Texas, bank had found a record of a deposit of $400 in cash made in the bank by J. M. Nored on January 17, 1944, and, second, since the trial appellant had ascertained from an officer of the First National Bank of Bowie, Texas, that the $800 check testified to by appellee as having been given by him to J. M. Nored in full payment of the two conveyances was paid by the Bank on January 20, 1944, that it was not cleared through any other bank, and that it was charged to appellee's account. That it was payable to J. M. Nored, bore the endorsement of J. M. Nored, that Nored was not a customer of the Bank and that no deposit was shown in his name at that or any other time.

The testimony taken upon the hearing of the motion for new trial consists of that of appellant to the effect that prior to trial he requested the Nocona banker to search his records for deposits made by Nored in January, 1944, and was told that none could be found, and that after the trial appellant went back and insisted upon a thorough search and that in the basement they found deposit slips of two cash deposits made by Nored on January 17, 1944, one of which was for $100 deposited to the credit of his son and one for $300 to his own credit. There was attached to the motion an affidavit of the Nocona banker stating that the above deposit slips were found by him in the search after the trial. There is an affidavit by Roy Coffield, President of the Bowie bank, in evidence on the hearing of the motion, which affidavit disclosed what we have mentioned with reference to the $800 check. These affidavits were admitted in evidence by agreement of the parties. Neither of the two bankers was called as a witness upon the trial.

Many of our courts have had to deal with situations similar to the one now before us. They have uniformly held that

the granting of new trial in such cases is within the judicial discretion of the trial court and his acts will not be reviewed except when he abuses that discretion. Appellant recognizes the stated rule and charges that the court did abuse that discretion in this instance.

Appellant cites us to Goodrich v. Masey, Tex.Civ.App., 227 S.W.2d 844, which holds that whether the motion for new trial on grounds of newly discovered evidence should be granted is within the discretion of the trial court and unless that discretion is abused it will not be disturbed. The case further holds that the probative force of the claimed new evidence and its probable effect upon the result of another trial were matters for the trial court. When the court in this case overruled the motion he decided those issues against appellant.

■ We think it proper to add that in such motions as this, the court will determine if diligence to procure the testimony has been exercised. It has been held that diligence has not been shown if the same diligence that procured the testimony after trial would have discovered it before the trial if exercised in the same way. Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331, error refused, n. r. e.

■ If the new evidence is merely cumulative of that already given or tends to impeach the testimony of an adversary, it does not afford grounds for new trial. Vance v. Batterton, Tex.Civ.App., 187 S. W.2d 247, writ refused.

■ In this case Nored had testified to having deposited $400 in the Nocona bank at about the time he said appellee paid it to him. The testimony of the Nocona banker relied upon in the motion only corroborated that of Nored and was cumulative thereof. It does not appear that any effort was made before trial to obtain the testimony now proposed to be produced by banker Coffield, although there is evidence that appellant's counsel had seen the $800 check about which Coffield would testify, and of course no diligence to procure his testimony appears. Coffield's proposed testimony corroborates and is cumulative of the testimony of appellee and may be construed as corroborating that of Nored offered by appellant. Under the above authorities, such testimony does not afford grounds for a new trial. We see no abuse of the discretion of the trial court.

From what we have said it is obvious that we see no error for which a reversal should be had and the judgment is affirmed.

Affirmed.