**In re Hayward BRAWN and Brenda M. Brawn, Debtors.**

**Gail P. APPLEBEE, et al., Plaintiffs,**

**v.**

**Hayward BRAWN, Defendant.**

**Bankruptcy No. 90–10471.
Adv. No. 90–1051.**

United States Bankruptcy Court,
D. Maine.

March 16, 1992.

John F. Logan, II, Logan, Kurr & Hamilton, Bangor, Me., Joseph L. Ferris, Ferris, Dearborn & Willey, Brewer, Me., for plaintiffs Gail P. Applebee, et al.

Norman S. Heitmann, III, Bangor, Me., for debtors—Hayward Brawn and Brenda M. Brawn.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

### Introduction

Consolidated for consideration on a stipulated record are: plaintiffs' adversary complaint seeking to establish their claim's non-dischargeability under § 523(a)(4) of the Bankruptcy Code [1]; plaintiffs' objection to Hayward Brawn's claim of exemption in residential real estate; and Hayward Brawn's § 522(f)(1) motion seeking to avoid the plaintiffs' judicial lien on his residence.

For the reasons set forth below, the plaintiffs' claim of nondischargeability cannot prevail; the objection to the exemption claim must be overruled; and the motion to avoid plaintiffs' judicial lien must be granted.

---

1. Unless otherwise indicated, all references to the "Code," the "Bankruptcy Code" or to statutory sections are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101, *et seq.* (1991).

## Facts

Alvin S. Brawn ("Alvin") died testate on March 19, 1987, leaving six children. Gail P. Applebee, Freeman Brawn, Marlene Archer, Marvin Lee Brawn and Eve Harriett Danforth (collectively the "plaintiffs") are five. Hayward Brawn ("Hayward") is the sixth.[2]

At his death, Alvin's assets included $20,-644.65 on deposit in a joint bank account in the names of "Alvin S. Brawn or Hayward Brawn."[3] On the day Alvin died, Hayward withdrew the funds in the account.[4] Alvin's will designated Hayward as personal representative and directed that the estate's assets be distributed equally among Alvin's six children.[5] On April 13, 1987, Hayward accepted appointment as personal representative, knowing at the time that the plaintiffs, as Alvin's devisees or, alternatively, his heirs, claimed an interest in the funds previously held in the joint account.[6] Hayward did not restore the funds to the account, nor did he distribute them according to the will's directives.[7]

On November 13, 1987, plaintiffs filed suit in Probate Court for Penobscot County to establish their right to share in the $20,-644.65 fund.[8] On July 16, 1990, that action, which Hayward had removed to the Superior Court, culminated in a final judgment, requiring Hayward to replace the funds and to distribute them in accordance with Alvin's testamentary disposition.[9] The state court judge adopted comprehensive factual findings made by a court-appointed referee, including findings that the funds in the joint account had been wrongfully withdrawn; that the funds were estate assets; and that Hayward was obligated to restore them.[10] Hayward did not appeal, nor did he satisfy the judgment obligation.[11] On August 14, 1990, Hayward and his wife filed a joint petition for relief under Chapter 7.

## Discussion

### 1. Dischargeability Issues.

#### a. Collateral Estoppel.

Plaintiffs contend that the state court judgment, and the factual findings on which it is pinned, establish that their claim is excepted from discharge by § 523(a)(4). Hayward argues that, because the dischargeability complaint asserts a different cause of action than that previously litigated, the state adjudication is not determinative and that, in any event, the state court addressed different factual issues than those that figure here.

Plaintiffs do not urge that res judicata's principles carry the day. They asserted an entirely different cause of action in state court. The state court did not, and could not, consider dischargeability issues.[12] Rather, plaintiffs posit that the facts determined by the state court establish a § 523(a)(4) discharge exception. Thus, this is a case for issue preclusion, or collateral estoppel, rather than one for claim preclusion, or res judicata. See In re Picard, 133 B.R. 1, 2 n. 3 (Bankr.D.Me.1991).

Federal courts must give effect to state court judgments.[13] Until recently,

---

2. Trial Stipulation of the Parties ("Stipulation") No. 1, Court Doc. No. 10.

3. Stipulation No. 2.

4. Supplemental Stipulation, Court Doc. No. 22.

5. Stipulation Nos. 4, 5.

6. Stipulation Nos. 5, 6.

7. Plaintiffs' Exhibit 3, Superior Court Judgment.

8. Stipulation No. 8.

9. Stipulation Nos. 8, 9; Exhibit 3.

10. Exhibits 3, 4.

11. Stipulation No. 9; Debtors' Schedule of Liabilities.

12. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). With exceptions not pertinent here, bankruptcy court is the exclusive forum for determination of § 523(a)(4) issues. 11 U.S.C. § 523(c)(1). *See generally Grogan v. Garner,* —— U.S. at —— n. 10, 111 S.Ct. at 658 n. 10 (discussing 1970 jurisdictional amendments to Bankruptcy Act dischargeability provisions).

13. 28 U.S.C. § 1738 (1991). *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *In re Brown,* 951 F.2d 564 (3rd Cir.1991).

however, unresolved questions concerning unique characteristics of dischargeability actions left doubt as to what effect state court factual determinations would have in the context of § 523(a) disputes. It is clear now that collateral estoppel may be invoked under appropriate circumstances in dischargeability actions. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).

Generally, federal courts give a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which that judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. at 81, 104 S.Ct. at 896. *See Roy v. Augusta,* 712 F.2d 1517, 1520–21 (1st Cir.1983); *General Foods Corp. v. Massachusetts Dept. of Public Health,* 648 F.2d 784 (1st Cir.1981). This case presents plaintiffs' attempt to wield collateral estoppel as a sword, cutting away Hayward's factual defenses to their § 523(a)(4) claim. Federal bankruptcy principles contemplate the doctrine's offensive use in § 523(a) actions. *Grogan v. Garner,* — U.S. at —, 111 S.Ct. at 658. Nevertheless, the question remains whether such use here is consistent with the "preclusive effect" that the Maine courts would give a Maine judgment.

■ Maine's Supreme Judicial Court has explained that collateral estoppel operates so that "when an essential fact or question is actually litigated on the merits and determined by a valid final judgment, the determination is conclusive between the same parties and their privies on a different cause of action." *Hossler v. Barry,* 403 A.2d 762, 767 (Me.1979). *See also Chandler v. Dubey,* 378 A.2d 1096 (Me.1977); *Sevigny v. City of Biddeford,* 344 A.2d 34 (Me.1975).[14] The purposes of collateral estoppel include preventing repetitious litigation, avoiding inconsistent results and giving sanctity and finality to judgments. *Hossler v. Barry,* 403 A.2d at 767 (citing *Cianchette v. Verrier,* 155 Me. 74, 151 A.2d 502 (1959).

■ Plaintiffs, having successfully litigated in state court, seek that to which the principle of finality of judgments entitles them. Exhaustive inquiry is unnecessary to conclude that, to the extent factual issues pertinent to their § 523(a)(4) claim were determined in state court, the plaintiffs may assert those determinations in aid of their claims here. If the issues to be precluded are the same as those involved in the prior action; if those issues were actually litigated; if they were determined by a valid and final judgment; and if the determinations were essential to the prior judgment; then collateral estoppel will operate. *In re Picard,* 133 B.R. at 2. *See Chandler v. Dubey,* 378 A.2d at 1098.

b. *Applying the Estoppel.*

■ Section 523(a)(4)'s discharge exception provides that a debtor may not be discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...." The exception's requisites, which must be proved by a preponderance of the evidence[15], consist of a "defalcation" while

---

**14.** *Hossler* extended the availability of collateral estoppel to instances in which mutuality of estoppel (requiring that the doctrine be invoked by parties or privies to a preceding action) does not exist. 403 A.2d at 767. Recognizing that unfairness may result when collateral estoppel is used offensively by a stranger to an earlier action, the court nevertheless approved such use in circumstances when the party against whom collateral estoppel is utilized has had a "full and fair opportunity" to litigate in the prior suit. *Id.* at 768–69.

Because this is a case of mutual estoppel, it is unnecessary to review the factors, articulated by the *Hossler* court, that must be considered case by case in determining whether justice is served by permitting collateral estoppel's offensive use

by a stranger. *Id.* at 769. *See also Cohen v. Bucci,* 905 F.2d 1111, 1113 (7th Cir.1990) (comparing mutual and non-mutual collateral estoppel). Hayward has not attempted to demonstrate prejudice as a consequence of the application of collateral estoppel in this instance. *See Hossler v. Barry,* 403 A.2d at 769 (burden of party opposing use of collateral estoppel to show prejudice). *Cf. State Mutual Insurance Co. v. Bragg,* 589 A.2d 35, 37 (Me.1991) (discussing offensive use of collateral estoppel in the context of insurance coverage dispute).

**15.** *See Grogan v. Garner,* — U.S. at —, 111 S.Ct. at 659 (burden of proof for all § 523(a) discharge exceptions is preponderance of the evidence).

the debtor was acting in a fiduciary capacity, as that capacity is narrowly defined under § 523(a)(4). *See In re Brown*, 131 B.R. 900, 904 (Bankr.D.Me.1991); *In re Reeves*, 124 B.R. 5, 6 (Bankr.D.N.H.1990). Although the state court necessarily and finally determined Hayward's default,[16] the record does not establish that Hayward's default occurred while he acted in a fiduciary capacity vis-a-vis the plaintiffs.

Hayward undeniably misappropriated estate funds in the joint account, but he was not at the time operating in a capacity "imbued with attributes giving rise to, in substance, a trust." *In re Brown*, 131 B.R. at 905. Hayward appropriated the joint account funds on the very day his father died, well before his appointment as personal representative.

■ To sustain a § 523(a)(4) claim, a creditor must establish that the required fiduciary relationship existed at the time the debtor engaged in the conduct giving rise to the debt at issue. *In re Waning*, 120 B.R. 607, 614 (Bankr.D.Me.1990). *See In re Reeves*, 124 B.R. at 9 (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). The plaintiffs proved in state court that Hayward's actions were contrary to Alvin's wishes and that the funds should have been included in Alvin's estate.[17] The state court did not find that the funds in the joint account constituted a trust *res* at the time Hayward withdrew them.[18] Although the state court ordered Hayward to restore the funds after he commenced service as personal representative, the acts giving rise to plaintiffs' claim preceded his appointment as the estate's fiduciary. The distinction is critical. *See In re Hodges*, 115 B.R. 152, 155 (Bankr.S.D.Ill.1990) (denying § 523(a)(4) claim because executrix's defalcation occurred prior to her appointment as estate's fiduciary). *Cf. In re Valdes*, 98 B.R. 78, 80 (Bankr.M.D.Fla.1989) (innocent, but improper, use of estate funds by estate's personal representative gives rise to non-dischargeable claim under § 523(a)(4)); *In re Gramza*, 13 B.R. 733, 735 (Bankr.E.D.Wis. 1981) (claims non-dischargeable under § 523(a)(4) because state court found that debtor failed to account for funds which came into his possession as estate's personal representative). As cynical, selfish and insensitive as Hayward's conduct may have been, plaintiffs' § 523(a)(4) claim cannot carry the day.[19]

### 2. Exemption Issues.

Invoking Maine's state exemption statute, as he must,[20] Hayward has asserted a

---

**16.** Under § 523(a)(4), the concept of "defalcation" embraces "the slightest misconduct, negligence or ignorance. . . ." *In re Brown*, 131 B.R. at 904; *In re Reeves*, 124 B.R. at 6. It does not require intentional wrongdoing. *Id.* The superior court found that Hayward withdrew and failed to distribute the funds in the bank account, resulting in a loss of $20,644.65 to the estate, an unequivocal "default." *In re Brown*, 131 B.R. at 904. Even if wrongful intent were required, the state court's determination established it. The referee described Hayward's conduct and resistance to the plaintiffs' claims as "bad faith." Plaintiffs' Exhibit 4, Referee's Report, at 3.

**17.** Plaintiffs' Exhibit 4, Referee's Report, at 2.

**18.** The Superior Court found that the plaintiffs had rebutted Maine's statutory presumption that, on the death of one party to a joint account, funds on deposit belong to the surviving party or parties, rather than to the decedent's estate. The judgment adopts the referee's finding that "the joint account was established as a matter of convenience and that Alvin Brawn was relying upon the Defendant, Hayward Brawn, to divide the account evenly among himself and his siblings." Plaintiffs' Exhibit 3, Superior Court Judgment, at 2. The Superior Court did not find that establishing the joint account created a trust, and the facts it found fall short of establishing the essential elements of a trust under Maine law. *See Shiro v. Drew*, 174 F.Supp. 495, 499–500 (D.Me.1959) (to be effectual, a declaration of trust must be explicit, unconditional and complete, vesting equitable title in the beneficiary thereby and irrevocably). *See also In re Reeves*, 124 B.R. at 9 (characteristics of express trust include explicit declaration of trust, trust *res*, and intention to create trust); *In re Cairone*, 12 B.R. 60, 62 (Bankr.D.R.I.1981) (explaining narrow scope of fiduciary relationships that come with § 523(a)(4)).

**19.** Plaintiffs have not asserted any other possible basis for a discharge exception.

**20.** Maine has "opted out" of the Bankruptcy Code's federal exemption scheme, thereby restricting debtors in bankruptcy to use of state law exemptions, supplemented by non-bankruptcy federal exemptions. *See* 11 U.S.C. § 522(b)(2)(A); 14 M.R.S.A. § 4426.

$60,000.00 exemption in his residence under 14 M.R.S.A. § 4422(1).[21] Maine increases the generally available $7,500.00 "homestead" exemption to $60,000.00 if the debtor or his dependent is over 60 years of age or physically or mentally disabled from gainful employment.[22] The parties agree that Hayward "is disabled within the meaning of 14 Me.Rev.Stat.Anno. § 4422(1)(B)."[23] Nevertheless, citing disqualifying language within the exemption provision, plaintiffs argue that, because of the nature of their judgment against him, Hayward may claim only a $7,500.00 residential exemption.

In response, Hayward urges, first, that plaintiffs' objection came too late and, therefore, cannot be considered beyond an inquiry into whether there is a "good faith statutory basis" for his exemption claim; and, second, that the disqualifying language of the statute cannot operate against him.[24]

### a. Timeliness of Objection.

■ F.R.Bankr.P. 4003(b) provides that a trustee or any creditor[25] may file objections to a debtor's claims of exemptions within thirty days after the conclusion of the meeting of creditors or the filing of an amendment to the debtor's exemption list or supplemental schedules.[26] Hayward's meeting of creditors was conducted, and concluded, on September 10, 1990. Plaintiffs filed a pleading, styled "Objection to Exemption Claim," on November 5, 1990.[27] Thus, the debtor argues that objection must be considered, if at all,

---

**21.** The statute provides, in pertinent part:

*Exempt Property*

The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.

1. Residence. The exemption of a debtor's residence is subject to this subsection.

A. Except as provided in paragraph B, the debtor's aggregate interest, not to exceed $7,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, provided that if the debtor's interest is held jointly with any other person or persons, the exemption shall not exceed in value the lesser of $7,500 or the product of the debtor's fractional share times $15,000.

B. The debtor's aggregate interest, not to exceed $60,000 in value in property described in paragraph A, if the debtor or a dependent of the debtor is either a person 60 years of age or older or a person physically or mentally disabled and because of such disability is unable to engage in substantial gainful employment and whose disability has lasted or can be expected to last for at least 12 months or can be expected to result in death; provided that if the debtor's interest is held jointly with any other person or persons, the exemption shall not exceed in value the lesser of $60,000 or the product of the fractional share of the debtor's interest times $120,000. This paragraph does not apply to liens obtained prior to its effective date or to judgments based on torts involving other than ordinary negligence on the part of the debtor.

C. That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period.

14 M.R.S.A. § 4422(1) (1991).

**22.** *See* 14 M.R.S.A. § 4422(1)(B), *supra,* n. 21.

**23.** Stipulation No. 10.

**24.** Hayward's challenge to plaintiffs' objection includes a constitutional challenge to a portion of Maine's exemption statute. Initially, certification to the Attorney General of the State of Maine was made pursuant to 28 U.S.C. § 2403 (1991). However, Hayward's exemption entitlement is readily resolved on statutory grounds.

**25.** There is no dispute that plaintiffs are "creditors" within the meaning of Rule 4003(b). *See* 11 U.S.C. §§ 101(10)(A) (defining "creditor" as an entity that has a "claim" against a debtor) *and* 101(5) (defining claim in broad terms). They brought the state court action, and obtained judgment there, in their individual names.

**26.** **Objections to Claim of Exemptions.** The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

F.R.Bankr.P. 4003(b).

**27.** Court Doc. No. 17.

only to determine whether his claim has a good faith statutory basis. *In re Kingsbury,* 124 B.R. 146, 148 (Bankr.D.Me.1991). *See also In re Peterson,* 920 F.2d 1389 (8th Cir.1990). *But see Taylor v. Freeland & Kronz,* 938 F.2d 420 (3rd Cir.), *cert granted,* —— U.S. ——, 112 S.Ct. 632, 116 L.Ed.2d 602 (1991) (untimely objection to exemption bars any challenge to exemption entitlement).

In considering the timeliness issue, however, the court notes plaintiffs' rejoinder to Hayward's motion seeking to avoid the plaintiffs' judicial lien on his residence. Filed September 12, 1990, the motion asserted Hayward's entitlement to 14 M.R.S.A. § 4422(1)(B)'s $60,000.00 exemption. In their response, filed September 24, 1990, plaintiffs stated "that the Debtor is not entitled to a $60,000.00 exemption on said residence."[28] Thus, although they did not file a distinct objection at first, plaintiffs manifested their intention to contest Hayward's $60,000.00 exemption claim and effectively communicated that intention to Hayward and the court well within Rule 4003(b)'s thirty day period. The objection will be fully considered.[29]

b. *The $60,000.00 Residence Exemption.*

■ In support of their objection to Hayward's asserted $60,000.00 residence exemption, plaintiffs cite the pertinent statutory subsection's final sentence: "This

paragraph does not apply to liens obtained prior to its effective date or to judgments based on torts involving other than ordinary negligence on the part of the debtor."[30] Hayward concedes that plaintiffs' judgment is based on a tort "involving other than ordinary negligence ..." within the meaning of 14 M.R.S.A. § 4422(1)(B). If operative in bankruptcy, the exemption's disqualifying clause would remit Hayward to the $7,500.00 residence exemption.

The disqualifying clause could be invoked by creditors attempting to defeat a debtor's § 522(f)(1) motion in circumstances where tort judgments based on other than "ordinary negligence" are outstanding. Such attempts would raise serious issues concerning the state statute's vitality in bankruptcy proceedings.[31] The federal constitution's supremacy clause and provisions of the Bankruptcy Code would operate to nullify the statute's effect if it conflicted with federal bankruptcy principles.[32] However, Maine's legislature apparently anticipated and, in any event, avoided a constitutional collision. The state's opt-out provision states:

> Notwithstanding anything to the contrary in the United States Code, Title 11, Section 522(b), a debtor may exempt from property of the debtor's estate under United States Code, Title 11, only that property exempt under the United States Code, Title 11, Section 522(b)(2)(A)

**28.** Response to Motion to Avoid Lien, Court Doc. No. 12. A motion seeking to avoid the plaintiffs' lien was first filed on August 17, 1990. The plaintiffs' response to that motion denied the claimed exemption, too, albeit in more general terms. Following hearings on August 29, 1990, the motion was dismissed without prejudice.

**29.** The rules prescribe no form for objections to exemption claims. *Compare* F.R.Bankr.P. 3001(a) (addressing form of proofs of claim) *with* F.R.Bankr.P. 4003(b) (addressing objections to exemptions). Plaintiffs' response to Hayward's § 522(f) motion qualifies, in and of itself, as the "objection" Rule 4003(b) requires. Even if it were considered under principles governing "informal" filings whose deficiencies may be cured by subsequent amendment, Rule 4003(b)'s time limit would be satisfied. *Cf. In re Hemingway Transport, Inc.,* 954 F.2d 1 (1st Cir. 1992) (discussing informal proofs of claim).

**30.** 14 M.R.S.A. § 4422(1)(B), *supra* n. 21.

**31.** Among other things, the content of the bankruptcy estate, in light of a debtor's level of exemption entitlement, would depend on the existence or non-existence of disqualifying claims. *Cf. In re Cooley,* 67 B.R. 229 (Bankr. N.D.Ala.1986), *aff'd,* 72 B.R. 54 (N.D.Ala.E.D. 1987) (discussing Alabama case law exception to exemptions for tort judgments and concluding that the exemptions could be asserted against the bankruptcy estate notwithstanding the existence of tort claim creditors).

**32.** *Owen v. Owen,* —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). *See* U.S. Const. art. I, § 8 (bankruptcy power); art. VI, cl. 2 (supremacy).

and (B), *except that any debtor eligible for a residence exemption under section 4422, subsection 1, paragraph B, may exempt the amount allowed in that paragraph.*

14 M.R.S.A. § 4426 (emphasis supplied). Thus, in the bankruptcy context, the exemption's disqualifying clause is nugatory.

Hayward is "eligible" for the $60,000.00 residence exemption by reason of his disability. He may assert it here.[33]

### c. *Avoiding the Judgment Lien.*

Finally, Hayward seeks to avoid plaintiffs' judgment lien on exempt residential real estate. With Hayward's entitlement to the $60,000.00 exemption resolved, the issue is straightforward. Under § 522(f)(1)[34] plaintiffs' judicial lien,[35] is subject to avoidance because it impairs Hayward's exemption.[36]

### *Conclusion*

Plaintiffs' claim against Hayward is not excepted from discharge under § 523(a)(4). Hayward's claim to the $60,000.00 residence exemption provided by 14 M.R.S.A. § 4422(1)(B) is valid. Plaintiffs' judicial

lien on Hayward's exempt residential real estate is avoided.

An order consistent with this opinion will enter forthwith.

---

33. The plaintiffs do not argue that Maine's statutory nullification of 14 M.R.S.A. § 4422's disqualifying clause in bankruptcy is impermissible because the state has created a special bankruptcy exemption, a practice that some courts hold stretches the opt-out authority Congress granted the states in § 522(b)(1) too far. *See In re Mata,* 115 B.R. 288, 291 (Bankr.D.Colo.1990) (invalidating Colorado statute according different exemption entitlement to assets in debtor's qualified pension, retirement or deferred compensation plan within bankruptcy, as opposed to without it, for lack of geographical uniformity); *In re Lennen,* 71 B.R. 80, 83 (Bankr. N.D.Cal.1987) (invalidating California "bankruptcy only" exemptions). *But see In re Shumaker,* 124 B.R. 820, 825–26 (Bankr.D.Mont. 1991) (declining invitation to follow *Lennen* and *Mata* in considering challenge to Montana statute that exempts individual retirement accounts for bankruptcy debtors, but not for non-bankruptcy debtors). Today's decision, therefore, neither addresses nor decides that issue.

34. In pertinent part, the statute provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to

which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien;

\*    \*    \*    \*    \*    \*

11 U.S.C. § 522(f)(1).

35. A "judicial lien" is a lien obtained by "judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). Plaintiffs first acquired their lien by post-judgment writ issued by the state court and recorded in the Penobscot County Registry of Deeds. Exhibit 5. The lien secures recovery on the state court judgment. Debtor's Motion to Avoid Lien on Exempt Property, Court Doc. No. 9, and the Plaintiffs' Response to Motion, Court Doc. 12. Plaintiffs' Exhibit Nos. 3, 5.

36. Brenda Brawn's $7,500.00 exemption in her interest in the residence is not at issue. The state court judgment runs against Hayward only. It does not impair Brenda's interest in the property. The parties disagree regarding the value of the Brawns' residential real estate. However, none asserts that it is worth more than $67,500, the amount of Hayward and Brenda's combined exemptions. *See* 11 U.S.C. § 522(m).