**In re William Ernst BERRY, III, Debtor.**

**Geraldine BELL, Creditor for Class Plaintiffs,**

**v.**

**William Ernst BERRY, III, Defendant.**

**Bankruptcy No. 594–50019–7.
Adv. No. 594–5028.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Dec. 1, 1994.

Johnny Roy Phillips, Lubbock, TX, for debtor/defendant.

Madison Sowder, Hurley & Sowder and Mike M. Calfin, Lubbock, TX, for plaintiffs.

## MEMORANDUM OPINION ON DISCHARGEABILITY

JOHN C. AKARD, Bankruptcy Judge.

In this adversary proceeding, the court must determine whether the debt of William Ernst Berry, III (Debtor) is dischargeable.[1] Plaintiffs, approximately thirty individuals,[2] claimed the debt is nondischargeable under § 523(a)(4) of the Bankruptcy Code[3] due to the Debtor's fraudulent misrepresentation

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(L).

2. The Debtor stipulated that these individuals comprised a class and that this adversary proceeding could be considered a class action.

3. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

while acting in a fiduciary capacity.[4] The Debtor maintained he acted in good faith and exercised reasonable care in his advertising and as a broker for First Chicago Certificate Corporation (First Chicago). The Debtor contended he was mistaken that the certificates of deposit (CDs) issued by First Chicago were not insured by the Federal Deposit Insurance Corporation (FDIC). He denied he committed any act or conduct that in fact or law constituted fraud. The court finds the debt dischargeable because the Debtor's actions did not rise to the level of misconduct outlined in § 523(a)(4) and because the Debtor was not acting in a fiduciary capacity as that term is used in § 523(a)(4).

## FACTS

The Debtor, doing business as Annuities and Insurance Brokers, advertised and sold First Chicago CDs. The Debtor entered into a "direct marketing agreement" with First Chicago on February 7, 1992. Under the terms of the agreement, the Debtor, upon securing an investor, completed a First Chicago CD registration form. Each investor signed the "CD registration form"[5] which stated First Chicago *purchases FDIC insured Certificates of Deposit.*" The Debtor forwarded both the completed form and the investor's check to First Chicago, for which he received a one percent commission. First Chicago then issued each investor an individual certificate.

The Debtor, by advertisement and in conversation, represented to the Plaintiffs that the CDs issued by First Chicago were FDIC insured. First Chicago acted as a third party trustee for the CD investor by placing his or her money with various FDIC insured banks around the country. FDIC insurance was to "flow" from those banks in which the funds were deposited. The Plaintiffs relied

on these representations. They later discovered that the CDs were not FDIC insured.

On August 24, 1992, the Federal Bureau of Investigation froze all of First Chicago's assets while investigating allegations that it misrepresented its CDs as being FDIC insured. First Chicago became insolvent and was placed in bankruptcy. The Plaintiffs received approximately 73% of their initial investment in First Chicago' bankruptcy proceedings. On January 7, 1994, the Debtor filed a Chapter 7 bankruptcy. The Plaintiffs filed this adversary proceeding claiming a nondischargeable debt against the Debtor. There were thirty Plaintiffs reported to have lost money in the investment. However, only six affidavits were filed with the court. The sum of the losses reported in these six affidavits was approximately $165,250.[6]

The Debtor maintains he acted in good faith and exercised reasonable care as a broker for First Chicago CDs. Prior to selling First Chicago CDs, the Debtor contacted the FDIC in Washington, D.C. and confirmed that First Chicago's practice was common in the banking industry. The FDIC assured him each investor would be insured up to $100,000 if First Chicago followed standard third party trustee procedures for this type of transaction. Similarly, agents of First Chicago assured the Debtor that they were following all procedures necessary to have FDIC insurance "flow" from the member bank to the investor. Additionally, every brochure and all correspondence from First Chicago stated that all investments received FDIC insurance coverage. Finally, the Debtor contacted the Chicago Better Business Bureau and obtained a Dun and Bradstreet report, both of which indicated First Chicago was a reputable and stable corporation. The Debtor knew that First Chicago was not FDIC insured and maintains that

---

4. The court questions whether the Plaintiffs have a debt recoverable from the Debtor as required by § 523. A "debt" is a liability on a claim § 101(12) and a claim is a "right to payment" § 101(5)(A). Neither the Plaintiffs nor the Defendant addressed the threshold issue of whether a debtor, who was an agent, is liable for debts incurred by his bankrupt principal. Since both parties assumed that a "debt" existed, the court accepts their assumption for the purposes of this opinion.

5. The court concludes that each investor signed a registration form. Neither party introduced any documents calling for the purchase of CDs by the Plaintiffs. The blank registration form introduced into evidence as Debtor's Exhibit 3, called for the investor's signature.

6. No evidence was introduced to substantiate the amounts claimed by the other Plaintiffs.

neither he nor any of his associates represented First Chicago as being FDIC insured.

Plaintiffs allege that even if he exercised reasonable care as a First Chicago CD broker, the Debtor fraudulently advertised and misrepresented First Chicago CDs. Plaintiffs assert the advertisements should have stated that neither he nor First Chicago was FDIC insured and that the FDIC insurance would "flow" from member banks in which investor's funds were to be deposited.

## DISCUSSION

"In determining dischargeability questions under Section 523 of the Bankruptcy Code the court must consider the primary purpose of bankruptcy, which is to relieve the honest debtor from the weight of his or her debts and permit a 'fresh start'." *In re Chavez*, 140 B.R. 413, 419 (Bankr.W.D.Tex. 1992) (*citing Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). In order to thwart abuse of a "fresh start," § 523(a)(4) excepts from discharge debts that arise from a debtor's fraud while acting in a fiduciary capacity. 140 B.R. at 419. Nonetheless, "[d]ue to the severity of a 'nondischargeable' determination, courts have strictly construed these exceptions in favor of the debtor." *Id.* "However, the creditor's burden of proof to show nondischargeability is only preponderance of the evidence." *Id.* (*citing Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)).

Section 523(a)(4) states that "[a] discharge ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity." To show nondischargeability under § 523(a)(4), a creditor must prove by a preponderance of the evidence that: (1) the debt was caused by fraud, and (2) the debtor had a fiduciary relationship with the creditor at the time the debt was created. *Pisoni v. Hodges (In re Hodges )*, 115 B.R. 152 (Bankr. S.D.Ill.1990); *Chavez* at 422.

### *"Fraud" as Applied in § 523(a)(4)*

"Fraud within the meaning of 11 U.S.C. § 523(a)(4) requires positive fraud or fraud in fact, involving moral turpitude or intentional wrong. Accordingly, it cannot be implied fraud or fraud in law which may exist without bad faith or immorality." *Lawrence Steel Erection Co. v. Piercy (In re Piercy )*, 140 B.R. 108, 114 (Bankr.D.Md.1992). A debtor must actively misrepresent and intentionally deceive his creditor and the creditor must rely on that misrepresentation and deception in giving the debtor property or money. *Chavez* at 423.

It is undisputed that the Debtor misrepresented First Chicago CDs as FDIC insured, and that Plaintiffs relied upon his false representation. Thus, Plaintiffs maintain his misrepresentations constitute fraud under § 523. However, the court finds the Debtor acted in good faith and exercised reasonable care in concluding that First Chicago was a reputable business and that it was depositing the Plaintiffs' funds with FDIC insured banks under the third party trustee procedures approved by the FDIC.

To find fraud required by § 523(a)(4), a creditor must show by the preponderance of the evidence that the debtor acted in bad faith, knew of the falsity and intended to deceive his creditor. *Chavez, supra.* Additionally, Plaintiffs must show Debtor's fraud caused the debt. *Id.* Plaintiffs failed to meet their burden. Therefore, the court finds Debtor's conduct did not rise to the level of fraud required by § 523(a)(4).

### *"Fiduciary" as Applied in § 523(a)(4)*

"The issue of the existence of a fiduciary relationship is one of federal law, for Section 523(a)(4) purposes. *See In re Black*, 787 F.2d 503, 506 (10th Cir.1986). State law, however, plays an important role in determining the existence of a *trust* relationship." *In re Chavez*, 140 B.R. at 422 (citation omitted) (emphasis added). *See also Pisoni*, 115 B.R. at 155.

"Fiduciary" as applied in § 523(a)(4) requires that an express or technical trust exist between the debtor and the creditor. *Pisoni* at 155; *Chavez* at 423. Therefore, "an explicit proclamation of a trust relationship, a clearly defined trust *res,* and the intent to create such a relationship"

must be present before the court will find a fiduciary relationship exists under § 523(a)(4). *Id.* at 423. *See also Pisoni,* 115 B.R. at 155; *Miller v. Donald,* 235 S.W.2d 201 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). An implied trust, one imposed on a transaction by operation of law as an equitable matter, will not satisfy the requirements of § 523(a)(4). *Pisoni,* 115 B.R. at 155. *See also RAI Credit Corp. v. Patton (In re Patton),* 129 B.R. 113 (Bankr.W.D.Tex. 1991).

■■■■ "[T]o create an express trust the legal and equitable titles must be separate, the former being vested in a trustee and the latter in a beneficiary." *Miller v. Donald,* 235 S.W.2d at 205. An express agreement, the direct acts of the parties, or a written instrument gives rise to an express trust. *Id.* (*citing* 42 TEX.JUR., p. 611, § 10; *Wheeler v. Haralson,* 128 Tex. 429, 99 S.W.2d 885 (Tex.Comm'n App.1937, opinion adopted); *Brinkman v. Tinkler,* 117 S.W.2d 139 (Tex.Civ.App.—San Antonio 1938, writ ref'd)).

■■■ In the instant case, no express trust was created between the Plaintiffs and the Debtor. The Plaintiffs failed to show an express trust existed under the requirements of § 523, neither did Plaintiffs show there was ever an intent to create an express trust. The Plaintiffs offered no evidence of prior dealings between the individual Plaintiffs and the Debtor. The Debtor did not possess an interest in or legal title to the CDs. The Plaintiffs paid First Chicago and in turn First Chicago issued the CDs in the individual Plaintiff's name. Further, the Debtor had no control of the money used to purchase the CDs. For purposes of § 523(a)(4), no fiduciary relationship existed between the Plaintiffs and the Debtor.

■■■ The Plaintiffs cited several cases in which courts in a non-bankruptcy setting have found a fiduciary relationship when they applied a broad, general definition of fiduciary. Those cases are not applicable in determining dischargeability under § 523(a)(4). Furthermore, a debtor is not a fiduciary,

within the meaning of § 523(a)(4), when the debtor is merely in the position of an agent, bailee, broker, factor, partner, or other similarly situated person, unless some additional fact is shown. COLLIER ON BANKRUPTCY, ¶ 523.14 (15th ed.). No such additional fact was shown. The Debtor's business was known as Annuities & Insurance Brokers. All of the Plaintiffs were aware that they were dealing through a broker.

## CONCLUSION

The court finds that the Plaintiffs failed to show by a preponderance of the evidence that their claims against the Debtor should be nondischargeable under § 523(a)(4) for fraud while acting in a fiduciary capacity.[7]

---

7. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.

R.BANKR.P. 7052. This Memorandum will be published.